1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11  DAW INDUSTRIES, INC., a California          CASE NO. 07cv1381 IEG (RBB)
    corporation,

12                                              **ORDER GRANTING**
                                    Plaintiff,  **DEFENDANT'S MOTION TO**
13              vs.                             **DISMISS**

14  PROTEOR HOLDINGS, S.A., a French            [Doc. Nos. 7, 11, 12 ]
    company; PROTEOR, S.A., a French
15  company and ETABLISSEMENTS
    PROTEOR, a French company
16
17                                 Defendants.

18
            Presently before the Court is Defendant's[1] Motion to Dismiss Plaintiff's Complaint.  For the
19
    following reasons, the Court GRANTS the motion.
20

21                                  <u>BACKGROUND</u>

22  **A.    Factual Background**

23          The "incorporation by reference" doctrine permits district courts to consider, in connection

24  with a motion to dismiss, documents whose contents are alleged in the Complaint and whose

25  authenticity no party questions, but which are not physically attached to plaintiff's pleading.  <u>In re</u>

26  <u>Seracare Life Sciences, Inc.</u>, 2007 WL 935583, *4 (S.D. Cal. March 19, 2007) (citing <u>In re Silicon</u>

27  ───────────────────

28          [1]Defendants are related companies; Proteor Holdings, S.A. owns and controls Proteor, S.A.
    and Etablissements Proteor is an entity related to Proteor Holding S.A. and Proteor S.A.  Accordingly
    the Court refers to these multiple Defendants as a single Defendant entity.

                                        - 1 -

1   Graphics Inc. Securities Litigation, 183 F.3d 970, 986 (9th Cir.1999)); see also Branch v. Tunnell, 14

2   F.3d 449, 454 (9th Cir.1994) (holding that documents not physically attached to the complaint may

3   nonetheless be considered by the court on a 12(b)(6) motion to dismiss if the complaint refers to such

4   documents, the documents are "central" to plaintiff's claim, and no party questions the authenticity

5   of the copy attached to the 12(b)(6) motion).

6        In this case, the Complaint makes reference to a letter dated June 4, 2007 (D's Mem. ISO

7   Motion, Ex. G), a letter dated July 25, 2007 (D's Mem. ISO Motion, Ex. H), and a contract executed

8   September 2005 (D's Mem. ISO Motion, Ex. B).  Neither the letters nor the contract were physically

9   attached to the Complaint but these documents have been offered as exhibits to Defendant's Motion

10  to Dismiss and neither party challenges the authenticity of the documents.  Thus, in addition to the

11  Complaint, the Court looks to these documents in its recount of the factual background.

12       Defendant claims ownership of United States patent 6,869,560 ("the '560 patent") which is

13  directed to a process for manufacturing a flexible sleeve for a prosthesis or an orthopedic appliance

14  made with, among other materials, polyolefin foam.  (Compl. ¶ 14; Def. Mem ISO Mot., Ex. H.)

15  Plaintiff and Defendant have had a business relationship for many years, with Plaintiff serving as the

16  exclusive distributor of Defendant's products from January 1, 1987 until March 31, 2006. (Def. Mem.

17  ISO Mot., Ex. B.) More recently, after a legal dispute that is unrelated to this case, the two companies

18  entered into a settlement agreement, signed in September of 2005, which provides a basis for a

19  continued distribution agreement on a non-exclusive basis:

20       3.8    After March 31, 2006, [Defendant] will continue to sell [Defendant] products
                to [Plaintiff] on a non-exclusive basis at the current terms and conditions that
21              [Defendant] currently sells its products to [Plaintiff], in order that [Plaintiff]
                may continue to provide after-sales service, support and warrant to its clients
22              who had purchased [Defendant] products from [Plaintiff] before March 31,
                2006.
23  (See id.)

24       Sometime in 2007, Defendant became aware that Plaintiff, in addition to distributing and

25  selling certain flexible sleeves manufactured and supplied by Defendant, was also distributing and

26  selling a similar product under the EVERFLEX brand name.  In a July 25, 2007 letter, Defendant

27  accused Plaintiff of infringing Defendant's '560 patent through the sale of the EVERFLEX product.

28  (Def. Mem. ISO Mot., Ex. H.)  The basis for Defendant's claim was the result of tests performed by

1    Defendant on the EVERFLEX material which revealed the product was made using the material

2    mentioned in the Defendant's '560 patent: polyolefin foam.[2]  Two days after receiving this letter from

3    Defendant, on July 27, 2007, Plaintiff filed the instant lawsuit.

4         The Complaint asserts Defendant has alleged Plaintiff infringes the '560 patent "without

5    having provided sufficiently specific facts to support the allegation" and further asserts Plaintiff "does

6    not have sufficient information to know that it infringes the '560 patent and, accordingly denies

7    [Defendant's] allegations that it infringes the '560 patent."  Plaintiff goes on to allege that "on

8    information and belief and after a reasonable opportunity for further investigation and discovery,

9    [Plaintiff] believes that the '560 patent is invalid."  (Compl. at ¶ 16.)

10         In addition, the Complaint also alleges Defendant has engaged in a scheme to fix prices in

11   interstate commerce in the United States for its "Keasy" product,[3] in violation of the United States

12   antitrust laws.  (Compl. at ¶ 17.)  The Complaint alleges this scheme is evidenced by a June 4, 2007

13   letter.  (Id. (referencing Def. Mem ISO Mot., Ex. G).)  In that letter, Defendant informs Plaintiff that

14   it needs to reduce the purchasing discount that Plaintiff, as a distributor, receives for certain products

15   trading under the name "Keasy."  The letter also states Defendant recommends all resellers avoid price

16   battles and threatens action if one distributor prices Defendant's products much lower than other

17   distributors.  (See id.)  The Complaint goes on to allege Defendant is using the '560 patent as an anti-

18   competitive device.  (Compl. ¶ 19.)

19         Finally, the Complaint references the September 2005 settlement agreement, alleging it

20   contains a provision which mandates Defendant sell products to Plaintiff.  It also alleges Plaintiff has

21   placed orders with Defendant for the Keasy product and that, in violation of the agreement, Defendant

22   has refused to sell the Keasy product to Plaintiff.  (Compl. ¶ 20-22.)

23         Based on these allegations, the Complaint asks for (1) a declaratory judgment concerning

24   whether Plaintiff infringes the '560 patent and whether the patent is valid; (2) money damages and

25

26        [2]Patent '560 covers the method steps for forming a flexible sleeve or liner using a flexible
     thermoformable preform made from material "selected from the materials consisting of a polyolefin
27   foam, an ethylene-vinyl acetate foam by themselves or a blend of said materials with other
     thermoformable materials."  Proteor's tests on EVERFLEX revealed that it contained polyolefin.

28        [3]The Complaint makes no mention as to whether the "Keasy" product line includes all, some,
     or none of the products covered by the '560 patent.

- 3 -

1   injunctive relief arising from Defendant's alleged violations of the antitrust laws; and (3) money

2   damages for Defendant's breach of contract.

3        Defendant filed a motion to dismiss, arguing (1) Plaintiff's request for a declaratory judgement

4   of non-infringement and invalidity should be dismissed because there is no actual controversy within

5   the meaning of the Declaratory Judgment Act; (2) the antitrust portion of the Complaint should be

6   dismissed because it fails to allege enough specific facts to state a claim of relief; and (3) the breach

7   of contract claim should be dismissed either because the Complaint fails to properly allege breach.

8   **B.**     **Procedural Background**

9        Plaintiff filed its Complaint against Defendant on July 27, 2007. (Doc. No. 1.) Defendant filed

10   a motion to dismiss on September 28, 2007, arguing Plaintiff's declaratory judgment claim does not

11   satisfy the case and controversy requirement.  (Doc. No. 7.)  Defendant also asserts Plaintiff's

12   Complaint fails to allege facts sufficient to support either the antitrust cause of action or the breach

13   of contract claim.  (Id.)  Plaintiff filed an opposition on December 26, 2007.  (Doc. No. 11.)

14   Defendant filed a reply on January 7, 2008. (Doc. No. 12.) The Court held oral argument on January

15   14, 2008.

16   <u>**LEGAL STANDARD**</u>

17        A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the

18   claims asserted in the complaint.  Fed. R. Civ. Proc. 12(b)(6); <u>Navarro v. Block</u>, 250 F.3d 729, 731

19   (9th Cir. 2001).  To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the

20   minimal notice pleading requirements of Fed. R. Civ. Pro. 8(a)(2).[4] <u>Porter v. Jones</u>, 319 F.3d 483, 494

21   (9th Cir. 2003).  A court may dismiss a complaint for failure to state a claim when "it appears beyond

22   doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

23   relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Navarro</u>, 250 F.3d at 732 (citing <u>Conley</u>); <u>see</u>

24   <u>also</u> <u>Haddock v. Board of Dental Examiners</u>, 777 F.2d 462, 464 (9th Cir.1985) (a court should not

25   dismiss a complaint if it states a claim under any legal theory, even if plaintiff erroneously relies on

26   a different theory).  In other words, a Rule 12(b)(6) dismissal is proper only where there is either a

27

28        [4]Rule 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

1   "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

2   theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

3        In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the

4   contents of the complaint.  Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom

5   Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  The court must

6   accept all factual allegations pled in the complaint as true, and must construe them and draw all

7   reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co.,

8   80 F.3d 336, 337-38 (9th Cir.1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir.1995) (citing Usher v.

9   City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987).  In spite of the deference the court is bound

10  to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can

11  prove facts which [he or she] has not alleged."  Associated General Contractors of California, Inc. v.

12  California State Council of Carpenters, 459 U.S. 519, 526 (1983).  Furthermore, a court is not required

13  to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions

14  of fact, or unreasonable inferences.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.

15  2001); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

16       A court may dismiss a complaint without granting leave to amend only if it appears with

17  certainty that the plaintiff cannot state a claim and any amendment would be futile.  See Fed. R. Civ.

18  P. 15(a) (leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight

19  Systems, Inc., 957 F.2d 655, 658 (9th Cir.1992); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988);

20  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to

21  amend should be granted unless the court determines that the allegation of other facts consistent with

22  the challenged pleading could not possibly cure the deficiency").

23                                    **DISCUSSION**

24  **A.    Declaratory Judgment Claim**

25       Defendant argues the Complaint's statement that "[Plaintiff] does not have sufficient

26  information to know that it infringes the '560 patent" does not reflect an actual controversy.  Where

27  one side asserts infringement and the other ignorance, continues Defendant, the parties are not in

28  justiciable disagreement.  Defendant notes the Complaint makes it apparent Plaintiff did not conduct

1   a pre-filing investigation to determine whether its EVERFLEX product falls within the scope of the

2   claims of the '560 patent, specifically whether the EVERFLEX product is made of the materials

3   mentioned in the '560 patent.  With regard to the invalidity claim, Defendant asserts Plaintiff should

4   have presented Defendant with some allegedly invalidating prior art as a basis for contending the

5   patent is invalid and/or not infringed.  Instead, Plaintiff's allegations of invalidity seem to be purely

6   speculative and do not establish that at the time of filing there was "a definite and concrete dispute".

7        Plaintiff points to the contents of the July 25, 2007 letter which (1) accused Plaintiff of

8   infringing Defendant's '560 patent; (2) demanded that Plaintiff cease selling its allegedly infringing

9   EVERFLEX product; (3) demanded Plaintiff destroy all EVERFLEX inventory; and (4) cancelled

10  orders in claimed retaliation for "[Plaintiff's] clear disregard for [Defendant's] patent rights."  Plaintiff

11  argues it simply took the letter seriously and thus filed suit where it was faced with the choice of

12  pulling its product from the market or risking infringement litigation at any time and place of

13  Defendant's choosing.

14        **i.    Analysis**

15        The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within

16  its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

17  declare the rights and other legal relations of any interested party seeking such declaration, whether

18  or not further relief is or could be sought."  28 U.S.C. § 2201(a).  An important case interpreting the

19  DJA is the Federal Circuit's decision in <u>SanDisk Corp. .v STMicroelectronics, Inc.</u>, 480 F.3d 1372

20  (Fed. Cir. 2007).  In that case, the Federal Circuit explained the appropriateness of declaratory

21  judgment jurisdiction relies on some affirmative act by the patentee which casts legal doubt over

22  conduct asserted to be legal by the declaratory judgment plaintiff:

23        Declaratory judgment jurisdiction generally will not arise merely on the basis that a
          party learns of the existence of a patent owned by another or even perceives such a
24        patent to pose a risk of infringement, without some affirmative act by the patentee.
          But Article III jurisdiction may be met where the patentee takes a position that puts the
25        declaratory judgment plaintiff in the position of either pursuing arguably illegal
          behavior or <u>abandoning that which he claims a right to do.</u>
26
          We need not define the outer boundaries of declaratory judgment jurisdiction, . . . [w]e
27        hold only that where a patentee asserts rights under a patent based on certain identified
          ongoing or planned activity of another party, and <u>where that party contends that it has</u>
28        <u>the right to engage in the accused activity</u> without a license, an Article III case or
          controversy will arise and the party need not risk a suit for infringement by engaging

1    in the identified activity before seeking a declaration of its legal rights.

2    SanDisk Corp., 580 F.3d at 1381 (emphasis added).

3         The Court concludes Plaintiff's Complaint has not satisfied the requirements for declaratory

4    judgment jurisdiction.  Plaintiff's Complaint does not allege Plaintiff has "the right to engage in the

5    accused activity," indeed, Plaintiff's Complaint does not allege the right to engage in any activity at

6    all.  Plaintiff's position is simply that it does not know whether or not it has infringed the Defendant's

7    patent.  While the July 2007 letter provides context to the dispute, implying Plaintiff asserts the right

8    to continue it's manufacture and sale of the EVERFLEX product, this is insufficient to overcome the

9    Complaint's unequivocal statement of ignorance regarding whether this activity constitutes

10   infringement.  In light of the language in SanDisk and Fed. Rule of Civ. P. 8(a)'s requirement of "a

11   short and plain statement of the claim showing that the pleader is entitled to relief," the absence of an

12   allegation asserting the right to continue production of a potentially infringing product is fatal to a

13   declaratory judgment action regarding infringement.[5]

14        With regard to the request for a declaratory judgment of invalidity, while Plaintiff's Complaint

15   takes a definitive position on this issue ("[Plaintiff] believes that the '560 patent is invalid."), Plaintiff

16   has presented no factual allegations to support this legal conclusion and thus this claim should also

17   be dismissed.  Balistreri, 901 F.2d at 699 (Rule 12(b)(6) dismissal is proper where there is an absence

18   of sufficient facts alleged under a cognizable legal theory).

19        Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss the Plaintiff's

20   Declaratory Judgment Claim.

21   **B.    Antitrust Claim**

22        Defendant argues Plaintiff's Complaint fails to cite any facts which would establish a contract,

23   combination, or conspiracy in violation of the antitrust laws.  The Complaint only references a letter

24   which reiterates a lawful resale price maintenance agreement.  (Def. Mem ISO Mot., Ex. G.)  Resale

25   price maintenance is not an unlawful per se violation of the antitrust laws.  Thus, Plaintiff should have

26

27   _____

28        [5]Plaintiff attempts to rely on a July 18, 2007, letter in which one of its executives asserted that
     Plaintiff "unequivocally disputes [Defendant's] accusations" as making a clear statement of its belief
     that it is not infringing Defendant's patent.  (Attached to Def's Motion as Exhibit F.)  Because this
     document is not referenced in Plaintiff's Complaint, however, the Court does not consider it.

made allegations concerning standing, how the restraint is unlawful, and the relevant market power, which it has not done.  See Bahn v. NME Hosp., Inc., 929 F.2d 1404, 1410 (9th Cir. 1991) (In order to establish a claim  under Section 1 of the Sherman Act, a plaintiff must show: (1) a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; (3) that the restraint affected interstate commerce). Further, to the extent Plaintiff's Complaint asserts claims based on fraud, Defendant argues Plaintiff has failed to identify the "who, what, when, where, and how of the alleged fraud." Garmin Ltd. v. Tomtom, Inc., 2007 WL 2903843 at *3 (E.D. TX, 2007) (internal quotations omittted) (the heightened pleading requirements of Rule 9(b) apply to the fraud element of an antitrust claim brought under section 2 of the Sherman Act.)

Plaintiffs counter by emphasizing the Supreme Court's recent reiteration that Federal Rule of Civil Procedure 8(a)(2) and its conclusion that a Complaint need only "give the defendant fair notice of what the . . . claim and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Plaintiff asserts it has pled enough facts to state a claim to relief that is plausible because it pleads the relevant product, EVERFLEX, and geographic market, the United States.  (Compl. ¶ 51.)

**i.      Analysis**

In general, the procurement of a patent does not constitute an antitrust violation.  See FMC Corp. v. Manitowok Co., 835 F.2d 1411, 1418 and n. 16 (Fed. Cir. 1987).  Nor is it a violation of the Sherman Act to bring a patent infringement action in good faith, even if it is ultimately determined in the litigation that the patent is invalid.  See Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572, 1576 (Fed. Cir. 1990).  Exceptions exist where the patent is procured by fraud on the Patent Office, see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965), and where it is shown by clear and convincing evidence that the patent holder is enforcing the patent in bad faith, see Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 993 (9th Cir. 1979).

Plaintiff's Complaint makes the following allegations regarding the antitrust laws:

17.     By a letter dated June 4, 2007, [Defendant] further evidenced its scheme, by common design, plan, agreement and conspiracy, to fix prices in interstate commerce in the United States for its Keasy product, in order to suppress competition in the marketing, sale and distribution of its Keasy product

throughout the United States, in violation of United States anti-trust laws.

18.   Upon information and belief, [Defendant] [has] retaliated against [Plaintiff] because [Plaintiff] refuses to participate in [Defendant's] illegal scheme to fix prices and [Defendant's] have refused to sell the Keasy product to Plaintiff

19.   In addition, upon information and belief, [Defendant] [is] using the '560 patent as an anti-competitive device in violation of federal anti-trust law.

Noticeably absent from the Complaint are any allegations Defendant willfully failed to cite prior art to the patent office or any other fact tending to suggest Defendant knew its patent was invalid or otherwise committed fraud in the procurement of the patent.[6]  In light of this deficiency, Plaintiff has failed to state a violation of the antitrust laws.  Accordingly, the Defendant's Motion to Dismiss the Antitrust Claim is **GRANTED**.

## III.   Contract Claim

Defendant argues the terms of the settlement agreement do not mandate Defendant sell to Plaintiff any of Defendant's products on an unconditional basis.  Instead, the agreement provides Defendant's sale is provided "in order that [Plaintiff] may continue to provide after-sales service, support and warrant to its clients who had purchased [Defendant] products from [Plaintiff] before March 31, 2006."  (Def. Mem. ISO Mot. Ex. B.)  Accordingly, Defendant argues Plaintiff's breach of contract claim must allege Plaintiff ordered Defendant's products for the purpose of providing required services in order to survive dismissal.

Plaintiff argues the Complaint sufficiently supports the breach of contract claim insofar as it alleges a contract (which was attached as an exhibit to Defendant's MTD), an alleged breach, and alleged damages.

### i.   Analysis

The relevant provision of the contract reads as follows:

3.8   After March 31, 2006, [Defendant] will continue to sell [Defendant's] products to [Plaintiff] on a non-exclusive basis at the current terms and conditions that [Defendant] currently sells its products to [Plaintiff], in order that [Plaintiff] may continue to provide after-sales service, support and warrant to its clients

---

[6]Plaintiff suggests Defendant has admitted in a August 24, 2007 email that it failed to cite prior art to the patent office.  (Attached to Def's Motion as Exhibit L.)  However, this alleged admission appears only in an exhibit to Defendant's Motion to Dismiss.  It is not referenced in the Complaint and Plaintiff has cited no authority for the proposition that documents neither attached nor referenced in a complaint are properly considered in a motion to dismiss.

who had purchased [Defendant] products from [Plaintiff] before March 31, 2006.

(Def. Mem. ISO Mot., Ex. B, at 2.)  The Complaint alleges this contract mandates Defendant sell Defendant's products to Plaintiff, including the Keasy product and that in violation of the agreement Defendant has refused to sell its products, including Keasy, to Plaintiff. Compl ¶ 20-22.  However, as Defendant points out, there is no allegation of performance, or excuse for non-performance, on the part of the Plaintiff.  While Defendant has cited cases observing that such an allegation is required to state a breach of contract claim, see e.g., Mark Kravis, Inc. v. Franking Fueling Systems, Inc., 2007 WL 287338 4 (S.D. Cal. September 28, 2007) (citing California law), Plaintiff does not cite any cases excusing the lack of a performance allegation.  Accordingly, the Court finds Defendant's Motion to Dismiss with respect to the Contract Claim should be **GRANTED**.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss as to all of Plaintiff's causes of action.  However, because the Court concludes allegations of other facts consistent with the Complaint could possibly cure the deficiencies, the Court **GRANTS** Plaintiff leave to amend its Complaint.  Plaintiff may file an amended complaint addressing the deficiencies set forth above, no later than 14 days from the date this order is filed.

**DATED:  January 29, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**